UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY LEE KING,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>B. GATES, et al.<br><br>　　　　Defendants. | No. 1:23-cv-01245-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 14) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion to dismiss, filed December 18, 2023.

**I.**

**PROCEDUAL BACKGROUND**

This action is proceeding against Defendants Warden Brian Cates and Kitchen Supervisor Teresa Bowen for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment and negligence in violation of California state law.[1]

///

---

[1] Defendant Brian Cates was erroneously identified as B. Gates and Defendant T. Bowen was erroneously identified as A. Bowman.

1

1    On December 18, 2023, Defendants filed the instant motion to dismiss.  (ECF No. 14.)
2 Plaintiff filed an opposition on January 12, 2024, and Defendants filed a reply on January 23,
3 2024.  (ECF Nos. 15, 16.)

**II.**

**DISCUSSION**

**A.    Legal Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ileto v. Glock

Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

### B.  Allegations of Complaint

On November 14, 2022, on or around 5:00 p.m., while performing his job duty as a cook at California Correctional Institution in Tehachapi (CCI) kitchen, Plaintiff was pulling a water hose to wash down his area and slipped and fell causing his hand to fall into a boiling bus tub of water on the ground that a dishwasher was preparing to transport on a flat cart to his work area to wash trays because there is no hot water in the dishwashing area and has not been since kitchen 4B opened.  Plaintiff is the third inmate who has been severely burned and/or hospitalized from the hot water being transported in bus tubs on flat carts.

Plaintiff walked to his work supervisory and the correctional officer and showed them his injury and asked to go to medical.  Plaintiff was escorted to medical where medical care was started and an ambulance code 3 was called.  When Plaintiff was being transported from the prison to the hospital, the transportation officer who was riding in the ambulance asked the medic "[we're] going to [T]ehachapi hospital right," to which the medic replied, "No we are going to Grossmen burn center in [B]akersfield."  The correctional officer stated, "Bakersfield they told me [T]ehachapi I'm going to get stuck down the hill with no vehicle and there going to have to send a transportation team down to relieve me and drive me back up the hill to the prison and drop me off at my car so I can drive home then be back in the morning man this is not what I signed on for tonight."  The medic replied, "I got you and called out to the E.M.T driving and said [we're] going to change [to] Antelope Valley Hospital[.]  The Doctor said we don't have a burn unit we are a tra[u]ma hospital there [is] really nothing we can do."  The Doctor cut off Plaintiff's boiled dead skin and wrapped his hand and he was returned to his cell with third degree burns and no pain medication.

1       On November 15, 2022, at around 8:30 a.m. Plaintiff was called to medical where he saw
2  the doctor via videoconference and she asked why Plaintiff was there.  The Doctor told Plaintiff,
3  "I admitted you to the hospital burn unit in [B]akersfield last night."  Plaintiff told her, "they
4  changed hospitals [e]n route and took me to Antelope Valley Hospital."  The Doctor said, "I'm
5  sending you out right now, you have 3rd degree burns."  Plaintiff was taken to Grossmen burn
6  center in Bakersfield and the Doctor took one look at Plaintiff's hand and admitted him.  Plaintiff
7  stayed at the burn center from November 15, 2022 to November 26, 2022.  During that time, he
8  received two skin graft surgeries, hyperbaric oxygen therapy and physical therapy.
9       On November 26, 2022, Plaintiff was discharged and sent to CCI prison hospital where he
10  was given medical care until November 30, 2022, then discharged and placed back in his cell.
11       The unsafe hazardous practice that prison officials are making inmate kitchen workers
12  perform has now caused three inmates to be severely burned and/or hospitalized.  Inmates are still
13  being forced to perform these unsafe hazardous acts by draining boiling water from a kettle into
14  bus tubs and putting them on a flat cart and pushing them across a kitchen to be poured into a
15  wash ben so the trays can be washed.
16       CCI Tehachapi 4B kitchen was just built and opened within the last year and the Warden
17  should have never allowed the kitchen to be opened and used if they did not have the proper
18  equipment and machinery for the tasks that inmates are required to perform.
19       On November 30, 2022, Plaintiff went to the 4B kitchen to give the kitchen supervisor,
20  Ms. Bowen his lay-in from the Doctor and Ms. Bowen said, "what's wrong with you you didn't
21  learn to watch where you were walking from the other two inmates who have been injured before
22  you."  Plaintiff stated, "after the first person, why did you not fix it so it would not happen to
23  anyone else!  I gave her my lay-in and left."
24       **C.     Defendant's Motion to Dismiss**
25       Defendant Brian Cates argues that Plaintiff's complaint does not state a claim against
26  Warden Cates for deliberate indifference or negligence, and his injunctive relief claim against
27  both Defendants is moot because he was transferred to a different prison.  Defendants also seek to
28  strike the allegations in Plaintiff's complaint beginning at page 3, line 13, starting at the word

4

1  "when" through page 4 line 13 ending with the word "burns."

2     1.  <u>Failure to State a Claim Against Defendant Cates</u>

3    Defendant argues the only charging allegation against Cates is that he "should have never

4  allowed the kitchen to be opened and being used if they did not have the proper equipment and

5  machinery for the tasks the inmates are required to proform [sic]." (Compl. at 5, ECF No. 1.)

6  Defendant argues Plaintiff fails to allege any connection between Cates and the design or

7  construction of the kitchen or that Cates personally knew the kitchen lacked proper equipment.

8  Defendant also argues that there are no allegations that he participated in or directed decisions

9  about how the kitchen was equipped. Nor does Plaintiff allege Cates knew of similar occurrences

10 prior to Plaintiff's injury, yet failed to address them.

11   In opposition, Plaintiff submits that Defendant Cates was given state funding to open and

12 build a new kitchen on 4B yard at CCI and if he chose to use the state funding elsewhere or take

13 short cuts he is liable and responsible. Defendant Cates did not implement new equipment as he

14 was required to do so. Defendant Cates had knowledge of the hazardous condition because

15 Plaintiff was the third inmate in eight months to be injured by the same conditions. Plaintiff sent

16 notices to the CDCR safety board in Sacramento informing them of the hazardous conditions, and

17 Defendant T. Bowen filed several work orders requesting the condition be fixed and ordered

18 inmates to be careful in the meantime.

19   "The treatment a prisoner receives in prison and the conditions under which he is confined

20 are subject to scrutiny under the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832

21 (1994) (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)). Prison officials have a duty "to take

22 reasonable measures to guarantee the safety of inmates, which has been interpreted to include a

23 duty to protect prisoners." <u>Labatad v. Corrections Corp. of America</u>, 714 F.3d 1155, 1160 (9th

24 Cir. 2013) (citing <u>Farmer</u>, 511 U.S. at 832–33; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir.

25 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with

26 deliberate indifference to threat of serious harm or injury to an inmate." <u>Labatad</u>, 714 F.3d at

27 1160. This involves both objective and subjective components. The objective component requires

28 that the alleged deprivation be "sufficiently serious"; where a failure to prevent harm is alleged,

"the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). The subjective component requires that the prison official actually "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must ''be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and...must also draw the inference." Farmer, 511 U.S. at 837.  Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health...." Farmer, 511 U.S. at 843. "[D]eliberate indifference entails something more than mere negligence...[but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id. at 835. This "deliberate indifference" standard is equivalent to ''recklessness,'' in which ''a person disregards a risk of harm of which he is aware.'' Id. at 836–37.

Exposure to hazardous environmental conditions in a prison, including toxic substances and dangerous work environments, can form the basis of an Eighth Amendment conditions of confinement claim. See Helling v. McKinney, 509 U.S. 25, 28-29 (1993) (upholding Eighth Amendment claim based upon exposure to tobacco smoke); Morgan v. Morgensen, 465 F.3d 1041, 1047 (9th Cir. 2006) (holding that it was clearly established law that a "safety hazard in an occupational area" violated prisoner's Eighth Amendment rights); Keenan v. Hall, 83 F.3d 1083, 1089-90 (9th Cir. 1996) (concluding that deprivation of outdoor exercise, excessive noise and lighting, lack of ventilation, inadequate access to basic hygiene supplies, and inadequate food and water were sufficient to state an Eighth Amendment claim); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (noting asbestos exposure could serve as the basis for an Eighth Amendment claim); Kelley v. Borg, 60 F.3d 664, 666-67 (9th Cir. 1995) (holding that the law was sufficiently clearly established to allow an Eighth Amendment claim for failing to remove

inmate from cell where he was exposed to unidentified "fumes" which rendered him unconscious to proceed).

Here, as an initial matter, Defendant does not argue that the conditions in the kitchen at CCI as alleged by Plaintiff were "sufficiently serious" and posed a "substantial risk of serious harm" to give rise to a claim under the Eighth Amendment. As to the subjective component, Plaintiff has presented sufficient factual allegations to give rise to a plausible claim for relief against Defendant Cates under the Eighth Amendment and for negligence under California law.

It is not disputed that Defendant Brian Cates was the Warden at California Correctional Institution at the time of the alleged incident on November 14, 2022. As Warden, Cates was unquestionably responsible for the day-to-day operations of the prison and had the means to remedy the alleged "dangerous" condition in the kitchen. Here, Plaintiff specifically alleges that he was the third inmate to be injured by the conditions in the kitchen at CCI and Cates should have never allowed the kitchen to be opened and used without the proper equipment and machinery for the tasks inmates are required to perform. In support of his allegations, Plaintiff submits his own declaration, the declarations of another inmate who was injured in the same manner as Plaintiff, a letter written to Warden Cates advising him of the hazardous condition in the kitchen, and an inmate grievance regarding the condition which was denied by Cates. Indeed, Warden Cates denied the following alleges are NOT SUSTAINED:

> • Claimant alleges on November 14, 2022, they slipped and fell in the kitchen, sustaining major injuries. On December 30, 2022, they went to the 4B kitchen supervisor T. BOWEN to provide their lay-in paperwork. Claimant alleges BOWEN stated, "What is wrong with you? You didn't learn to watch where you're walking from the first two inmates that this happened to?"
>
> • Claimant contends on November 14, 2022, prison staff are creating a hazardous environment by allowing inmate kitchen workers to place boiling pots of water on the floor, and they (along with two other inmates), have tripped and fallen over them, sustaining major injuries.

(Compl. at 28, ECF No. 1.)

///

///

7

In Plaintiff's declaration attached to his complaint, Plaintiff declares as follows:

> On Nov. 14, 2022, while p[er]forming my assigned job dut[ies] as a cook in Tehachapi 4B kitchen, I was walking backwards pulling a water hose to wash down my work area. I slip and fell backwards and put my right hand out to catch myself and in doing so my hand went into a tub of boiling water that a dishwasher was draining out of the kettle to prepare for transport to his work are by flat cart.
>
> I am now the third inmate to be severely burned and hospitalized by these unsafe hazardous working conditions that the dishwashers are being forced to p[er]form. I was rushed code 3 by ambulance to the hospital and a[d]mitted to Grossman [B]urn Center in [B]akersfield California where I received two skin grafts for my 3rd degree burns. Six hours of hyperba[ric] ox[y]gen treatment and spent 16 days in the I.C.U.

(Compl. at 10, ECF No. 1.)[2]

While Cates may not be held liable simply as the Warden at CCI, Plaintiff has alleged more than respondeat superior liability in this instance. Drawing all inferences in favor of Plaintiff, Plaintiff has plead a plausible causal connection between the hazardous kitchen conditions and the alleged violation of the Eighth Amendment. Plaintiff need not prove any factual allegation at the motion-to-dismiss stage. As Plaintiff points out, based on his plausible claim that Defendant Cates did not take measures to make the kitchen safe to operate, he will establish his claim through discovery of "all Reports, Documents, Reports/Workorders." (Opp'n at 4.) With the benefit of discovery, Defendant Cates may present evidence that shows he had no connection to the design or construction, did not know the kitchen lacked proper equipment or of the unsanctioned practice wherein inmates transported hot water from the industrial kettle to the dishwashing area and failed to stop it; however, based on the complaint's factual allegations, it is plausible that Defendant Cates may have acted in violation of the Eighth Amendment. See Farmer, 511 U.S. at 844 (noting that prison officials may avoid Eighth Amendment liability at summary judgment and trial by showing that "they responded reasonably to the risk, even if the harm ultimately was not averted"). In sum, Plaintiff has not had any opportunity to take

---

[2] The Court notes that in screening prisoner pro se complaints pursuant to § 1915A and in ruling on a Rule 12(b)(6) motion, the Court may consider exhibits attached to the complaint. See, e.g., United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (exhibits attached to and incorporated by reference into the complaint can be considered on a motion to dismiss without converting it into a motion for summary judgment); Wilhelm v. Rotman, 680 F.3d 1113, 1116 & n.1 (9th Cir. 2012) (when screening complaint pursuant to 28 U.S.C. § 1915A, court may accept as true facts from complaint and supporting documentation, including complaint exhibits) (citations omitted).

1 discovery or develop the record. Whether or not the factual record, when developed more fully,
2 will ultimately show that the Eighth Amendment was violated, is a matter that cannot be resolved
3 at this stage. Accordingly, Defendant's motion to dismiss should be denied.

        2.        <u>Request for Injunctive Relief</u>

Defendant argues that Plaintiff's injunctive relief claim is moot because he was transferred to another prison.

In the operative complaint, Plaintiff seeks, inter alia, "[a] court order stop[p]ing the transportation of hot water in bus tubs to prevent anymore injur[ies] to inmates and install[l]ation of hot water pipes in the dishwashing area to fill the tub that holds the trays to be washed and desanitized." (Compl. at 7.)

Plaintiff's request for injunctive relief should be dismissed as moot. When Plaintiff filed this case he was incarcerated at the CCI. However, Plaintiff is currently incarcerated at Mule Creek State Prison. Where a prisoner is challenging conditions of confinement and is seeking injunctive relief, transfer to another prison renders the request for injunctive relief moot absent some evidence of an expectation of being transferred back. See <u>Preiser v. Newkirk</u>, 422 U.S. 395, 402-03 (1975); <u>Johnson v. Moore</u>, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); <u>see also</u> <u>Andrews v. Cervantes</u>, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). Here, there is no evidence that Plaintiff expects to be transferred back to the CCI. Therefore, Plaintiff's request for injunctive relief should be dismissed as moot.

        3.        <u>Motion to Strike Allegations From Complaint</u>

Defendant moves to strike the allegation in the complaint that Plaintiff was taken to a different hospital because a transport officer complained to the medic (Compl. at 3:13-4:13) because it has nothing to do with the claims Plaintiff asserts against Bowen or Cates.

Under Federal Rule of Civil Procedure 12(f), a pleading may be stricken because it includes "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike may be granted if 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.' " <u>Wilkerson v. Butler</u>, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citations omitted). A matter is immaterial if it "has no essential or

important relationship to the claim for relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds by, 510 U.S. 517 (1994). A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question. Id. Redundant matter is defined as allegations that "constitute a needless repetition of other averments or are foreign to the issue." Thornton v. Solutionone Cleaning Concepts, Inc., No. 06–1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007), citing Wilkerson v. Butler, 229 F.R.D. at 170.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380; see also Hanna v. Lane, 610 F.Supp. 32, 34 (N.D. Ill. 1985). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied for later determination of the sufficiency of the allegations on the merits. See Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973075 (9th Cir.2010); see also 5A Wright & Miller, at 1380.

"With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F.Supp. 2d 1048, 1057 (N.D. Cal. Apr. 19, 2004). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." Cruz v. Bank of N.Y. Mellon, No. 12-cv-00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d at 973.

Defendant seeks to strike the following factual allegations from the complaint:

> When we pulled out of the prison the transportation officer who was riding in the ambulance with me asked the medic who was putting in my I.V. "where [sic] going to Tehachapi Hospital right[.]  The medic repl[ie]d: No we are going to Grossmen burn center in Bakersfield."  The correctional officer said: "Bakersfield they told me Tehachapi, I'm going to get suck down the hill with no vehicle and there [sic] are going to have to send a transportation team down to relieve me and drive me back up the hill to the prison and drop me off at my car so I can drive him then be back in the morning man this is not what I signed on for tonight.  The medic said: "I got you and called out to the E.M.T. driving and said where [sic] going to change at [sic] Antelope Valley Hospital[.]

> The doctor said we don't have a burn unit we are a tra[u]ma hospital theres [sic] really nothing we can do.  The doctor cut off my boiled dead skin and wrap[p]ed my hand and I was put back into my cell and I layed [sic] in pain all night with 3rd degree burns and no pain medication.  On Nov. 15, 2022 around 8:30 a.m. I was called to medical where I saw the doctor on the video monitor and she asked me why are you here?  I admitted you to the hospital burn unit in Bakersfield last night.  I told her they changed hospitals [e]nroute and took me to Antelope Valley Hospital.  The doctor said: I'm sending you out right now, you have 3rd degree burns.

(ECF No. 1 at 3:13-4:13.)

Defendant does not explain how the factual allegations against them as presented in the first amended complaint are "redundant, immaterial, impertinent, or scandalous," as required for an order granting their Rule 12(f) motion. In addition, Defendant fails to demonstrate that he will be prejudiced by the additional factual allegations presented in the complaint. Moreover, there is no showing that the factual allegations have no bearing on the subject matter of this litigation. The factual allegations do not raise a new claim but rather elaborate on the circumstances following his work injury which forms the basis of his deliberate indifference claim. See LeDuc v. Kentucky Cent. Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992) ("[A]llegations supplying background or historical material" or allegations that, "when read with the complaint as a whole, give a full understanding thereof," need not be stricken under Rule 12(f)).  The allegations are not salacious or inflammatory, and removing them would not streamline the case. While Defendant contends the "allegation that [Plaintiff] was taken to the incorrect hospital is not relevant to the claims against Warden Cates and Supervisor Bowen[,]" but fails to specifically demonstrate how Plaintiff's position has changed or how they will be prejudiced. See Park v. Welch Foods, Inc., No. 5:12-CV-06449-PSG, 2014 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014) ("Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike.").  Accordingly, the motion to strike the allegations from Plaintiff's complaint should be denied.

### III.

### ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

11

1    Further, it is HEREBY RECOMMENDED that Defendant's motion to dismiss be
2 GRANTED with respect to dismissal of Plaintiff's claim for injunctive relief and DENIED in all
3 other respects.
4    This Findings and Recommendation will be submitted to the United States District Judge
5 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14)**
6 **days** after being served with this Findings and Recommendation, the parties may file written
7 objections with the Court.  The document should be captioned "Objections to Magistrate Judge's
8 Findings and Recommendation."  The parties are advised that failure to file objections within the
9 specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834,
10 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 13, 2024**

UNITED STATES MAGISTRATE JUDGE